The SEVENTH REGIMENT FUND, Associates of the Engineer Corps and Company K, Seventh Regiment, Inc. and the Veterans of the Seventh Regiment, Plaintiffs

v.

George PATAKI, as Governor of the State of New York, Maj. Gen. John H. Fenimore V, individually and as the Adjutant General for the Division of Military and Naval Affairs, the Division of Military and Naval Affairs, Charles A. Gargano, as Chairman, President and Chief Executive Officer of the NYS Urban Corporation, NYS Urban Development Corporation d/b/a Empire State Development Corporation, Ernst & Young LLP and Seventh Regiment Armory Conservancy, Inc., Defendants.

No. 01 CIV 0819 LTS THK.

United States District Court, S.D. New York.

Jan. 18, 2002.

McCanliss & Early LLP by Philip M. Chiappone, New York City, for Plaintiff.

Elliot Spitzer, Attorney General of the State of New York by Joel Graber, Judith T. Kramer, New York City, for Defendants Governor, Adjutant General, and New York State Division of Military and Naval Affairs.

Rosenman & Colin LLP by Robert W. Gottlieb, Esq., Jeffrey L. Braun, Esq., Stacey B. Creem, Esq., New York City, for Defendants Charles A. Gargano and Empire State Development Corporation.

Paul, Weiss, Rifkind, Wharton & Garrison by Lewis R. Clayton, Esq., Jill M. Graziano, Esq., New York City, for Defendant Seventh Regiment Armory Conservancy, Inc.

## MEMORANDUM OPINION AND ORDER

SWAIN, District Judge.

This matter involves the proposed reuse or development of the historic Seventh Regiment Armory (the "Armory") located at 643 Park Avenue in Manhattan. Plaintiffs are three private non-profit organizations that assert property rights in the Armory and/or its contents. In this action, they challenge the issuance by certain defendants of a request for proposals ("RFP") inviting developers to submit bids for a long term lease of the Armory, to which defendant Seventh Regiment Armory Conservancy, Inc. ("Conservancy"), responded with a proposal to redevelop the Armory as a "theater and high-end restaurant" (the "Proposal").[1] Plaintiffs assert that the contemplated development would impair or destroy their property rights in the Armory and/or its contents, in violation of certain provisions of the Constitution of the United States. They seek to have the RFP declared unlawful and proceedings pursuant to it enjoined.

The Conservancy moved to dismiss Plaintiffs' complaint (the "Complaint"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Shortly thereafter, all of the New York State-affiliated defendants[2] interposed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking to dismiss all of the claims asserted against them in the Complaint. Defendant Ernst & Young LLP moved to dismiss the Complaint as against it; Plaintiffs voluntarily dismissed, without prejudice, the action as against that defendant, mooting the dismissal motion. Oral argument was heard on the motions of the State Defendants and the Conservancy insofar as they addressed Plaintiffs' claims asserted pursuant to the Takings Clause of the Fifth Amendment to the United States Constitution under section 1983 of Title 42 of the United States Code.[3] The Court has considered thoroughly the parties' submis-

---

**1.** Complaint at ¶ 36. The Proposal itself has not been made part of the record and, as of the time of oral argument, had not been disclosed to Plaintiffs.

**2.** Defendants Pataki, Fenimore, Division of Military and Naval Affairs ("DMNA"), Gargano, and NYS Urban Development Corporation ("State Defendants").

**3.** In their Complaint, Plaintiffs also asserted claims under Article I, Section 10, Clause 1 (the Contracts Clause), of the United States Constitution and the Due Process Clause of the Fifth Amendment to the Constitution. In response to the dispositive motions addressed in this Opinion, Plaintiffs offered to dismiss voluntarily, *without prejudice,* those claims, as well as all claims against defendant DMNA and all claims against defendant Fenimore in his personal capacity. Defendants opposed any such dismissal without prejudice. In response to an order directing Plaintiffs to state why the Court should entertain an application for voluntary dismissal without prejudice of those claims rather than adjudicate the pend-

sions and arguments. For the reasons that follow, Plaintiffs' application for dismissal with prejudice of certain of their claims is granted,[4] and the motions of the State Defendants and the Conservancy are granted with respect to the remaining claims.

### BACKGROUND

The following factual allegations are taken from the Complaint.

Plaintiffs are the Seventh Regiment Fund (the "Fund"), organized in 1909 and composed of present and past members of lineal descendants of the Seventh Regiment of the New York National Guard, including the current 107th Corps Support Group (the "Seventh Regiment" or "Regiment"); the Associates of the Engineer Corps and Company K, Seventh Regiment, Inc. (the "Associates"), organized in 1942 and composed of veterans of the Engineer Corps or Company K of the Seventh Regiment, or the lineal descendants of the unit; and the Veterans of the Seventh Regiment ("Veterans"), organized in 1861 and comprising approximately 1,000 former and present active duty members of the successor units of the Seventh Regiment. (Compl.¶¶ 1–4.)

The Seventh Regiment traces its provenance to a militia battalion formed in 1824 as the "National Guards;" it has been known as the Seventh Regiment since 1847. (Compl.¶¶ 14–15.) From its establishment, the Seventh Regiment provided for its own expenses, including the refurbishment, in 1859, of drill and office space in Tompkins Market provided free by the City of New York (the "City"). (Compl.¶¶ 15–16.) By the early 1870's, the Seventh Regiment was outgrowing its Tompkins Market space. In an 1873 statute, the New York State legislature directed the City to lease to field officers of the Seventh Regiment, and their successors in office, a plot of ground belonging to the City, "to be ... exclusively used for an armory and drill rooms by the Regiment;" field officers of the Seventh Regiment were authorized to accept the lease on behalf of the Regiment. (Compl.¶ 20.) On September 23, 1874, pursuant to further State legislation enacted that year, the City and the field officers entered into such a lease, and in 1877, construction of the Armory was initiated on a plot of land, bounded by 66th and 67th streets on the north and south and by Park and Lexington Avenues on the east and west (the "Land"). (Compl.¶ 24.) Pursuant to an 1879 lease between the City and the field officers, the Land and building "are to be 'held and used exclusively for an armory and drill rooms by' the Regiment." (Compl.¶ 26.) No State funds were used in erecting the Armory. The Armory is unique in New York and in the United States in that it was constructed and furnished solely with private funds raised by the active and veteran members of the Regiment. (Compl.¶¶ 27, 29.) Under a law passed in 1879, the City was required to appropriate funds to furnish heat, light and maintenance of the Armory. The City

---

ing dispositive motions insofar as they were directed to those claims, Plaintiffs moved pursuant to Fed.R.Civ.P. 41(a)(2) to dismiss those claims *with* prejudice, but without an award of costs or attorneys' fees to any party. Noting that the Court is empowered to grant a Rule 41(a)(2) dismissal on such terms and conditions as the Court deems proper, defendants requested that the Court defer any deci-

sions as to costs or attorneys' fees at this time. The Court will grant Plaintiffs' dismissal application, without prejudice to the parties' rights on the issues of costs, and of attorneys' fees as an element thereof (*see* 42 U.S.C. § 1988).

**4.** *See supra* note 3.

still pays the Regiment $8,000 per year in respect of such expenses. (Compl.¶ 25.)

By a State statute passed in 1893, the field officers of the Seventh Regiment were designated as Trustees of the Armory ("Trustees"). (Compl.28.) The Trustees are responsible for holding the Armory solely and exclusively for the public purposes of the Regiment and are also charged with the duty of maintaining and improving the Armory. (Compl.¶ 29.) For construction of the Armory alone, members of the Seventh Regiment and the Trustees spent over $600,000. Several private groups affiliated with Regiment members decorated and furnished rooms in the Armory. Regiment members or Trustees also supplied funds to furnish individual rooms of the Armory. Plaintiffs have also decorated and restored portions of the Armory. Ownership of all decorative properties of the Armory so furnished became vested in Veterans or Fund. (Compl. ¶¶ 31–32.) Under a law passed in 1942, the State assumed certain City obligations for upkeep of the Armory. The law did not, however, create an ownership interest by the State in the Armory. (Compl.¶ 30.)

In or about July of 2000, without the consent or approval of the Trustees, Defendants issued the RFP, purporting to seek a developer for the reuse of the Armory. The RFP purported to offer the Armory on a long term lease to such a developer, "who was invited to use the Armory without regard to the terms of the [1879] Lease, and the rights of the Regiment, the Veterans, the Associates or the Fund in and to the Armory." (Compl.¶ 33.) In connection with the RFP, the State has asserted that it is the owner of the Armory and that it " 'will decide at its sole discretion the make-up of the selection/evaluation team.' " (Compl.¶ 35.) In response to the RFP, the

Conservancy submitted a proposal for the development of the Armory into a "theater and high-end restaurant." (Compl.¶ 36.)

The Complaint asserts causes of action pursuant to 42 U.S.C. section 1983 for violation of the Due Process and Takings Clauses of the Fifth Amendment to the United States Constitution as well as of the Contracts Clause (Article I, section 10, clause 1) of the Constitution, demands a declaratory judgment with respect to the asserted Fifth Amendment violations, and asserts that Plaintiffs will suffer irreparable injury in the form of property deprivation unless the RFP is "restrained and declared unlawful."

### DISCUSSION

As noted above, Plaintiffs' Fifth Amendment Takings Clause claim is the only substantive one they have chosen to pursue.[5] Plaintiffs argue that, in issuing the RFP and receiving the Conservancy's proposal, the State Defendants and the Conservancy have impaired or threaten impairment of Plaintiffs' property rights in the Armory and/or its contents. The State Defendants argue that summary judgment in their favor is appropriate because Plaintiffs' Fifth Amendment takings claim is not ripe for adjudication, as Plaintiffs have not yet exhausted state procedures for seeking just compensation; the State Defendants also argue that Plaintiffs lack standing because they have no defensible property or contractual interest in the Armory. The Conservancy seeks dismissal for lack of subject matter jurisdiction on the same grounds, and dismissal on the merits pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for lack of a sufficient allegation of state action with respect to the Conservancy.

**5.** *See supra* note 3.

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Once the moving party has met its burden, the opposing party, to defeat the motion, must set forth specific facts showing a genuine issue for trial and may not rest on the mere allegations of its pleadings. *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir.1988). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence and ascertain the truth of the matter but, rather, to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nonetheless, the existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 247–48, 106 S.Ct. 2505.

■ "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). Where the defendant challenges the factual basis of jurisdiction, a district court may refer to evidence outside the pleadings. *See id.; Goodman v. Children's Television Workshop*, No. 98 Civ. 8348, 1999 WL 228396, at *2 (S.D.N.Y. Apr. 19, 1999); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976), *modified on other grounds sub nom., Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir.1984).

■ When considering a Rule 12(b)(1) motion, the Court does not draw inferences in plaintiff's favor. *Goodman*, 1999 WL 228396, at *3. A plaintiff asserting subject matter jurisdiction, once challenged, has the burden of proving by a preponderance of the evidence that jurisdiction exists. *See id.; Makarova*, 201 F.3d at 113. Unlike a motion to dismiss under Rule 12(b)(6), a motion to dismiss for lack of subject matter jurisdiction is not directed to the claim's merits. *See Exchange Nat'l Bank*, 544 F.2d at 1130–1.

Although there are factual as well as legal disputes between the parties as to the nature, basis and extent of the property rights asserted by Plaintiffs, such disputes do not preclude grant of the instant motions because, even if Plaintiffs had established that they have property rights in the Armory and/or its contents, their Fifth Amendment Takings Clause claim is not ripe for adjudication, and must therefore be dismissed for lack of subject matter jurisdiction.

■ Defendants have asserted, and Plaintiffs do not deny, that no proposal for redevelopment of the Armory has been accepted. Plaintiffs seek, by way of an injunction, prophylactic relief protecting them against anticipated future impairment of the property rights they claim. *See* Compl. ¶¶ 37 ("defendants and their agents are endeavoring to appropriate, without compensation, real assets of the Regiment"), 43 ("defendants' proposal regarding the Armory shall result in the deprivation ... of property rights of the plaintiffs to the Armory without ... just compensation"), 50 ("plaintiffs seek a declaratory judgment that the proposal for the 'reuse' of the Armory without the consent of the Trustees of the Armory will result in a violation of the plaintiffs' property rights in the Armory without ... just compensation"), and 52 ("If not restrained and declared unlawful by this court, the defendants' proposal for the purported restoration of the Seventh Regiment Armory will cause irreparable injury to the plaintiffs who will be deprived of their

property rights in and to the Armory."); transcript of August 10, 2001 oral argument ("Tr.") at 24, 26–29. There is no demonstration of any final state action with respect to their claimed property rights or the status of their utilization of the Armory, and no demonstration that they have pursued state remedies in respect of any perceived taking of their property. Under these circumstances, their Takings Clause claim is not ripe for adjudication.

■ The Takings Clause provides that "private property [shall not] be taken for public use without just compensation." U.S. Const., Amend. V. This Fifth Amendment prohibition is applicable to states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). "To establish a takings claim under 42 U.S.C. § 1983, [Plaintiffs] must show (1) a property interest; (2) that has been taken under the color of state law; (3) without just compensation." *HBP Associates v. Marsh*, 893 F.Supp. 271, 277 (S.D.N.Y.1995). It bears emphasis that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *see also SGB Fin. Services, Inc. v. Consol. City of Indianapolis–Marion County, Indiana*, 235 F.3d 1036, 1037 (7th Cir. 2000) ("[T]he takings clause of the fifth amendment ... does not forbid takings but simply requires 'just compensation' for the property, [such that] a state violates the Constitution only by refusing to pay up.")

Plaintiffs do not claim that the State Defendants have as yet ousted them from their accustomed uses of the Armory or taken the personal property in which they claim an ownership interest. Rather, they urge that the issuance of the RFP (which Plaintiffs acknowledge is, by its terms, subject to withdrawal or modification in advance of the selection of any particular development proposal[6]) and the Conservancy's proposal make it likely that arrangements will be entered into that will impair Plaintiffs' asserted property rights in the future. Plaintiffs invoke the Takings Clause in an effort to preclude entry into such arrangements, arguing that prohibition is the only "just compensation" appropriate under the circumstances. (Tr. at 24–29.) Leaving aside at this point the question of whether such a cause of action for injunctive relief could even lie under the Takings Clause, it is clear that there has been no final decision by the State authorities as to implementation of the arrangements Plaintiffs fear, much less a formal and final rejection of any challenge by Plaintiffs to the specifics of those arrangements.

■ The challenge Plaintiffs seek to mount is similar in nature to takings claims premised on land-use regulation. Plaintiffs claim that the use changes that may be selected and implemented for the Armory will be inconsistent with the physical property and use rights they claim. Federal courts cannot adjudicate takings claims premised on use restrictions until the relevant state or state agency has had an opportunity to make a definitive decision and the property owner has exhausted available state avenues for securing compensation. *See Williamson County*, 473 U.S. at 193–94, 105 S.Ct. 3108. There are thus two essential predicates for a claim premised on something other than an unequivocal, outright usurpation of private

---

**6.** Tr. at 24–25.

property: "takings-type claims are not ripe until (1) 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue,' and (2) the claimant has sought compensation from the state if the state provides a 'reasonable, certain and adequate provision for obtaining compensation.'" *Kittay v. Giuliani,* 252 F.3d 645, 647 (2d Cir.2001) (citing *Williamson County,* 473 U.S. at 186, 194, 105 S.Ct. 3108.) Until both elements of the standard have been met, the claim is not ripe and the federal court lacks subject matter jurisdiction. *See Williamson County,* 473 U.S. at 193–95, 105 S.Ct. 3108; *Kittay,* 252 F.3d at 646–47; *SGB Fin. Services,* 235 F.3d at 1038; *Agripost, Inc. v. Miami–Dade County,* 195 F.3d 1225, 1231 (11th Cir. 1999); *West 95 Hous. Corp. v. New York City Dep't of Hous. Pres. & Dev.,* No. 01 CIV 1345, 2001 WL 664628, at *6 (S.D.N.Y. June 12, 2001); *HBP Associates,* 893 F.Supp. at 277–78.

Like a landowner dissatisfied with the nature or type of development apparently permitted under state or local regulations, Plaintiffs expect that their use and enjoyment of the property rights they claim will be burdened unduly by defendants' decisions as to future use of the Armory. Under these circumstances, their Fifth Amendment claim, if any, will not ripen until there has been a final decision on the nature of any new uses at the Armory and the impact of such changes on Plaintiffs' claimed rights is clear. "[A] takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed the extent of restriction on property is not known and a regulatory taking has not yet been established." *Palazzolo v. Rhode Island,* 533 U.S. 606, 121 S.Ct. 2448, 2459, 150 L.Ed.2d 592 (2001) (citation omitted). To the extent Plaintiffs anticipate that the State Defendants will use their authority over the Armory in an untoward fashion injurious to Plaintiffs' interests, defendants have not had "the opportunity, using [their] own reasonable procedures, to decide and explain the reach of [the] challenged [action]." *Id.*[7] Plaintiff's claim is thus unripe and the Complaint must be dismissed for lack of subject matter jurisdiction insofar as it is premised on alleged taking of property in violation of the Fifth Amendment.

"A federal court, moreover, cannot entertain a takings claims under § 1983 unless or until the complaining landowner has been denied an adequate postdeprivation remedy." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 721, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). *See also HBP Associates,* 893 F.Supp. at 277 ("To fulfill the … requirement that the taking be 'without just compensation,' [plaintiff] must allege that it exhausted state procedures for obtaining just compensation."). Plaintiffs' failure to pursue remedies under state law precludes the assertion of a takings claim at this juncture. *See, e.g., West 95 Hous. Corp.,* 2001 WL 664628, at *6. Defendants contend, and Plaintiffs do not dispute, that New York state provides a remedy under its eminent domain procedures if Plaintiffs

---

**7.** Notably, Plaintiffs have chosen to forgo their due process challenge (*see supra* note 3), and do not challenge State Defendants' procedures for determining future use of the Armory on any other grounds.

have a property interest in the Armory. (State Defts.' Reply Mem. at 10, citing N.Y. Eminent Domain Proced. Law §§ 101, 201, 301.) *See New Holland Vill. Condo. v. Destaso Enterprises, Ltd.*, 139 F.Supp.2d 499, 504 (S.D.N.Y.2001) ("[T]he State of New York has not one but two methods for obtaining compensation—by following the procedures set forth in the State's Eminent Domain Procedure Law, or by bringing an action under Article I, Section 7 of the New York State Constitution—both of which have been held to meet *Williamson*'s requirements.").

In light of the foregoing conclusion that subject matter jurisdiction is lacking here, the Court need not address the Conservancy's argument that the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

*CONCLUSION*

For the foregoing reasons, Plaintiffs' motion to dismiss voluntarily, with prejudice, their claims asserted pursuant to the Contracts Clause of the Constitution of the United States and the Due Process Clause of the Fifth Amendment to the Constitution, as well as all of their claims against DMNA and their claims against defendant Fenimore in his personal capacity, is granted. The State Defendants' motion for summary judgment is granted and the Complaint is dismissed as against them for lack of subject matter jurisdiction. The motion of defendant Conservancy to dismiss the Complaint as against it is granted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Any application for the award of attorneys' fees pursuant to 42 U.S.C. Section 1988 as an element of costs shall be served and filed, with a courtesy copy to Chambers, no later than 45 days from the date hereof. Responsive and reply papers in respect of such application shall be served and filed in accor-

dance with Local Civil Rule 6.1 of this Court.

SO ORDERED.